IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| BWAY CORPORATION d/b/a MAUSER PACKAGING SOLUTIONS and VP RACING FUELS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Travelers Property Casualty Company of America ("Travelers"), by and through its attorneys, Jeanne M. Hoffmann and Usery & Associates, for its Complaint for Declaratory Judgment states as follows:

## NATURE OF THE ACTION

1. This is an action seeking a declaratory judgment regarding the applicability of insurance coverage for Mauser Packaging Solutions, Inc. in the underlying case captioned *VP Racing Fuels, Inc. v. BWAY Corporation d/b/a Mauser Packaging Solutions*, No. 2025 LA 001059, filed in the Eighteenth Judicial Circuit, DuPage County, Illinois (the "Underlying Action").

2. Travelers seeks a declaration that it has no duty to defend or indemnify BWAY Corporation d/b/a Mauser Packaging Solutions, Inc. ("Mauser") in connection with the Underlying Action as set forth herein.

## THE PARTIES

3. Plaintiff Travelers is a Connecticut corporation with its principal place of business located at One Tower Square, Hartford, Connecticut.

4. Defendant Mauser is a Delaware corporation with its principal place of business located at 1515 W. 22nd St., Oak Brook, Illinois.

5. Defendant VP Racing Fuels, Inc. ("VP") is a Texas corporation with its principal place of business located at 10205 Oasis St., San Antonio, Texas.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendants by virtue of their contracts with the forum state and pursuant to 735 ILCS 5/2-209 in that Defendants are doing business in the State of Illinois.

8. Venue is proper pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in Illinois.

9. An actual justiciable controversy exists between the parties as to insurance coverage afforded under the policies Travelers issued to Mauser.

## FACTUAL BACKGROUND

10. VP filed the Underlying Action on August 22, 2025, asserting claims against Mauser for breach of contract, fraudulent concealment and violation of Illinois Consumer Fraud and Deceptive Practices Act, all as more fully set forth therein. A true and correct copy of the Complaint filed in the Underlying Action is attached hereto as Exhibit A.

11. In the Underlying Action, VP alleges that it manufactures and creates blends of various fuel products used by professional teams and recreational racers across the spectrum of motorsports. Complaint at ¶7.

12.     In the Underlying Action, VP alleges that it contracted with Mauser to manufacture pails used by VP for the sale of its racing fuel products and has been purchasing these pails from Mauser on an ongoing basis since about 2011.  *Id*. at ¶9.

13.     VP further alleges that beginning in January, 2023, VP entered into a new 2-year supply agreement with Mauser, and that prior to doing so VP "had not experienced any concerns with Mauser's pails to indicate the Mauser pails would cause contamination of VP Racing products.  *Id*. at ¶¶15-16.

14.     VP alleges that Mauser had never disclosed the chemical composition of its pails' interior treatment or the treatment application process used on its pails, nor any change to either the treatment composition or application process."  *Id*. at ¶16.  VP further alleges that based on Mauser's representations, it "reasonably believed the pails it would receive under the Supply Agreement would be the same that it had been receiving and using without a contamination issue for more than a decade."  *Id*. at ¶17.

15.     The Underlying Action claims that "around October 2023, VP Racing began receiving reports of its customers' observing decreased performance and fuel deposits after using VP Racing products", and that its "customers' racing vehicles were not operating as expected under normal conditions", that "several affected vehicles suffered engine damage that required costly repairs", and that "[s]ome alleged they had suffered physical injuries due to vehicle malfunction."  *Id*. at ¶20

16.     VP alleges upon information and belief that in or around August, 2023, unbeknownst and undisclosed to VP, "Mauser changed an aspect of the rust inhibitor used at its Homerville plant for pails shipped to VP."  *Id*. at ¶28.  VP further alleges that subsequent communications with Mauser revealed "Mauser's pattern of concealing potentially faulty or

nonconforming goods", and that additional issues with Mauser's products were discovered, such as, that "thousands of quart containers supplied by Mauser were leaking due to defective seals", and that Mauser knew that the containers were susceptible to leaking but sold them to VP "without disclosing that information in order to clear the containers from its inventory." *Id*. at ¶¶32-33.

17.     In Count I of the Underlying Action, VP seeks contractual indemnification from Mauser for "all claims arising out of or resulting from the goods being defective in workmanship and materials", and the "numerous claims for vehicle damage and possible personal injuries arising from contamination caused by the defective pails." *Id*. at ¶¶48-49.

18.     In Count II of the Underlying Action, VP asserts fraudulent concealment by Mauser in its concealment of the change in rust inhibitor used in the pails in order to induce VP to continue purchasing its pails from Mauser. *Id*. at 55.

19.     Count III of the Underlying Action asserts a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), based upon Mauser's alleged "concealment of material facts by selling pails to VP Racing without disclosing changes to the rust inhibitor used on the pails", and its continued concealment even "after VP Racing discovered the rust inhibitor had contaminated its products and damaged its customers' vehicles." *Id.* at ¶59.

20.     In the Underlying Action VP seeks the following damages:

(a)     Compensation for its lost product filled in Mauser pails after Mauser had the opportunity to notify VP that the change in rust inhibitor could and did cause fuel contamination;

(b)     amounts VP paid to store contaminated products and contaminated empty pails;

(c)     amounts VP paid to replace contaminated products purchased by consumers;

(d)     amounts VP paid to repair vehicles damaged by contaminated products;

4

(e)    compensation for VP having to face and continue to face liability for potential personal injury claims arising from the fuel contamination;

(f)    the costs it incurred in order to investigate and identify "the root cause of the fuel contamination";

(g)    amounts VP paid to secure an alternate supply of pails that would not contaminate its fuels; and

(h)    compensation for damage to its reputation within the racing community that purchases its products and to its relationships with distributors, retailers and customers.

## THE INSURANCE POLICIES

21.    Travelers issued Policy No. TJ-EXGL-4260B001-TIL-23 to Mauser for the policy period of 10/01/23 – 10/01/24 with a per occurrence $500,000 limit, applicable after a $500,000 self-insured retention (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit B.

22.    The Policy provides in relevant part:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

****
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

**SELF-INSURED RETENTIONS ENDORSEMENT –COVERAGES A, B AND D. – RETENTIONS APPLY TO DAMAGES AND LIMITED COVERED POLLUTION COSTS ONLY – ALLOCATED LOSS ADJUSTMENT EXPENSES ARE SHARED PROPORTIONATELY**

This endorsement modifies insurance provided under the following: COMMERCIAL GEN ERAL LIABILITY COVERAGE PART

**SCHEDULE OF SELF -INSURED RETENTIONS – COVERAGES A, B AND D**

Each Occurrence Retention
    $500,000

Personal Injury and Advertising Injury
Each Person or Organization Retention
    $500,000

**PROVISIONS**

**1.** The following replaces Paragraph **1.a.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies, but only to the extent that the amount of such damages exceeds the applicable self-insured retention. We will have the right, but not the duty to defend the insured against any "suit" seeking those damages. We will have such right even if the total amount of the damages because of "bodily injury" or "property damage" to which this insurance applies probably will not exceed the applicable self-insured retention. We will have no duty to defend the insured against any "suit" even if the amount of damages exceeds the applicable self-insured retention.

We may, at our discretion, investigate any "occurrence". We will have the right to settle any claim or "suit" that may result, if the total amount of the

6

damages because of "bodily injury" or "property damage" to which this insurance applies exceeds, or we determine that such amount probably will exceed, the applicable self-insured retention.

If we choose to investigate any "occurrence" or to defend the insured against any "suit" on any basis other than as "your TPA", we will pay all expenses we incur for such investigation or defense. Such expenses are not subject to any self-insured retention and will not reduce the limits of insurance.

The amount we will pay for damages is limited as described in Section III – Limits Of Insurance.

Our right to defend ends when we have used up the applicable limit of in the insurance payment of judgments or settlements under this Cover age Part.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the Supplementary Payments Section of this Cover age Part.

\*\*\*\*

**12.** The following is added to the **DEFINITIONS** Section of the Policy:

\*\*\*\*

"Your TPA" means:

a. The third-party claims licensed administrator approved in writing by us to administer claims or "suits" against you for injury or damage or" limited covered  pollution costs" to  which  this insurance applies;

b. You, if we have granted approval for you to self-administer such claims or "suits"; or

c. Us, if we are administering such claims or "suits" for you under a separate written contract.

23. The Policy includes the following exclusions and definitions:

**2.  Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

7

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "bodily injury" or "property damage", provided that:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**\*\*\*\***

**j. Damage To Property**

"Property damage" to:

  **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

8

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";
**(2)** "Your work"; or
**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

****

**SECTION V – DEFINITIONS**

****

**12.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**13.** "Insured contract" means:

\*\*\*\*

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*\*\*\*

**17.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** An act or omission committed in providing or failing to provide first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

**23.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, "electronic data" is not tangible property.

\*\*\*\*

**30.** "Your product":

**a.** Means:
**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

10

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**c.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**d.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**31.** "Your work":

a. Means:

**(1)** Work or operations performed by you or on your behalf; and

(2) Materials parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing or failure to provide warnings or instructions.

**\*\*\*\***

**EXTENSION OF COVERAGE – BODILY INJURY (GN 00 13 02 19)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces the definition of "bodily injury" in the **DEFINITIONS** section:

a. Physical harm, including sickness or disease; or

11

b.      Mental anguish, injury or illness, emotional distress, shock, fright, disability or humiliation; sustained by a person.

\*\*\*\*

**PRODUCTS – BATCH DEFINITION (CG D7 85 01 15)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART PROVISIONS**

1. The following is added to Paragraph 1., Insuring Agreement of Section 1 – COVERAGES - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

All "bodily injury" and "property damage liability that arises out of any one "batch" of "your products" and is sustained by more than one person or organization will be deemed to be caused by one "occurrence" and to occur at the time the first such "bodily injury" or "property damage" occurs, regardless of :

a.      The number of "occurrences" that caused such "bodily injury" or "property damage";

b.      The number of persons or organizations making claims or bringing "suits" for such "bodily injury" or "property damage"; or

c.      When such "bodily injury" or "property damage" occurs.

2.  The following is added to the DEFINITIONS Section:

Batch means the amount or quantity of "your products" that is subject to the same or substantially the same error or defect which makes such products faulty or dangerous and that:

a.      Is produced in a single continuous operation and can be distinguished by the specific date of production or by the batch, lot or run number assigned to it; or

b.      Is otherwise included in the same lot or lots of "your product" manufactured, sold, handled, distributed or disposed of by:

(1)      You;
(2)      Others trading under your name; or
(3)      Any person or organization whose business or assets you have acquired.

\*\*\*\*

**ILLINOIS CHANGES – DEFENSE COSTS (IL 01 62 10 13)**

**A.** The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

**1.** Section I of the Commercial General Liability; Commercial Liability; Umbrella; Employment-related Practices Liability, Farm; Liquor Liability, Owners and Contractors Protective Liability, Pollution Liability; Products/Completed Operations Liability; Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Under-ground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

24.     Travelers also issued to Policy No. CUP-5X844351-23-NF to Mauser, an Excess Follow-Form and Umbrella Liability Insurance Policy ("Umbrella Policy"), , with effective dates from 10/1/23 to 10/1/24 and a liability limit of $15,000,000.  A true and correct copy of the Umbrella Policy is attached hereto as Exhibit C.

25.     The Umbrella Policy includes the following provisions:

**SECTION I – COVERAGES**

**A. COVERAGE A – EXCESS FOLLOW-FORM LIABILITY**

**1.** We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage **A** of this insurance applies, provided that the "underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. If a sublimit is specified in any "underlying insurance", Coverage **A** of this insurance applies to damages that are in excess of that sublimit only if such sublimit is shown for that "underlying insurance" in the Schedule Of Underlying Insurance.

13

**2.** Coverage **A** of this insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance.

## B. COVERAGE B – UMBRELLA LIABILITY

**1.** We will pay on behalf of the insured those sums in excess of the "self-insured retention" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which Coverage **B** of this insurance applies.

**2.** Coverage **B** of this insurance applies to "bodily injury" or "property damage" only if:

**a.** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

**b.** The "bodily injury" or "property damage" occurs during the policy period;

**\*\*\*\***

## SECTION IV – EXCLUSIONS

This insurance does not apply to:

With respect to Coverage **B**:

## 1. Expected Or Intended Bodily Injury Or Property Damage

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## 2. Contractual Liability

"Bodily injury", "property damage", "personal injury" or "advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**\*\*\*\***

14

### 10. Damage To Property, Products Or Work

"Property damage" to:

a. Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person or organization, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**b.** Premises you sell, give away or abandon if the "property damage" arises out of any part of those premises;

**c.** Property loaned to you;

**d.** Personal property in the care, custody or control of the insured;

**e.** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the "property damage" arises out of those operations;

**f.** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it;

**g.** "Your product" arising out of "your product" or any part of it; or

**h.** "Your work" arising out of "your work" or any part of it and included in the "products completed operations hazard".

### 11. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property", or property that has not been physically injured, arising out of:

**a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or
"your work"; or

**b.** A delay or failure by you, or anyone acting on your behalf, to fulfill the terms of a contract or agreement.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

15

### 12. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";
**b.** "Your work"; or
**c.** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**\*\*\*\***

### SECTION VI – DEFINITIONS

**A. With respect to all coverages of this insurance:**

**\*\*\*\***

**8.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work"
will be deemed completed at the earliest of the following times:

**(a)** When all the work called for in your contract has been completed;

**(b)** When all the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

**B.** With respect to Coverage **B** and, to the extent that the following terms are not defined in the "underlying insurance", to Coverage **A**:

**4.** "Bodily injury" means:

**a.** Physical harm, including sickness or disease, sustained by a person; or

**b.** Mental anguish, injury or illness, or emotional distress, resulting at any time
from such physical harm, sickness or disease.

**10.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**14.** "Occurrence" means:

**a.** With respect to "bodily injury" or "property damage":

**(1)** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage". All "bodily injury" or "property damage" caused by such exposure to substantially the same general harmful conditions will be deemed to be caused by one "occurrence";

**18.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled,
distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## <u>CLAIM FOR DECLARATORY AND OTHER RELIEF</u>

26.     Travelers repeats and realleges the allegations contained in paragraphs 1-25 above as if set forth here in their entirety.

27.     The Underlying Action asserts claims against Mauser for common law breach of contract, common law fraudulent concealment and fraudulent concealment pursuant to the Illinois DTPA.

28.     The claims asserted against Mauser in the Underlying Action do not allege damages caused by an "occurrence" as defined by the Policy and the Umbrella Policy.

29.     The claims asserted against Mauser in the Underlying Action do not allege damages for "bodily injury" caused by an "occurrence" as defined by the Policy and the Umbrella Policy.

30.     The claims asserted against Mauser in the Underlying Action do not allege damages for "property damage" caused by an "occurrence" as defined by the Policy and the Umbrella Policy.

31.     To the extent that any of the claims asserted against Mauser in the Underlying Action may allege "property damage" as defined by the Policy and the Umbrella Policy, coverage is precluded by the Policy's and the Umbrella Policy's exclusion for damages "Expected or Intended" by the insured.

32.      To the extent that any of the claims asserted against Mauser in the Underlying Action may allege "property damage" as defined by the Policy and the Umbrella Policy, coverage is precluded by the Policy's and the Umbrella Policy's exclusion for damages for "Contractual Liability".

33.     To the extent that any of the claims asserted against Mauser in the Underlying Action may allege "property damage" as defined by the Policy and the Umbrella Policy, coverage is precluded by the Policy's and the Umbrella Policy's exclusion for damages for "property damage" to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

34.     To the extent that any of the claims asserted against Mauser in the Underlying Action may allege "property damage" as defined by the Policy and the Umbrella Policy, coverage is precluded by the Policy's and the Umbrella Policy's exclusion for damages for "property damage" to "your product" arising out of it or any part of it.

35.     To the extent that any of the claims asserted against Mauser in the Underlying Action may allege "property damage" as defined by the Policy and the Umbrella Policy, coverage is precluded by the Policy's and the Umbrella Policy's exclusion for damages for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

36.     To the extent that any of the claims asserted against Mauser in the Underlying Action may allege "property damage" as defined by the Policy and the Umbrella Policy, coverage is precluded by the Policy's and the Umbrella Policy's exclusion for damages for "property damage" to "impaired property" or property that has not been physically injured, arising out of:  a defect, deficiency, inadequacy or dangerous condition in "your product" or  "your work"; or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

37.     To the extent that any of the claims asserted against Mauser in the Underlying Action allege "property damage" as defined by the Policy and the Umbrella Policy, coverage is precluded by the Policy's and the Umbrella Policy's exclusion for damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: "your product, "your work" or "impaired property" if such product, work, or property is withdrawn or recalled from the market or from use

20

by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

38.    Travelers is defending Mauser in the Underlying Action, via independent counsel selected by Mauser and paid for by Travelers, subject to a reservation of all of its rights under the relevant insurance policies and its right to obtain a judicial determination regarding Travelers' right to disclaim coverage, terminate its defense and seek reimbursement for the defense costs incurred relating to the Underlying Action.

39.    An actual justiciable controversy exists between Travelers and Mauser as to coverage afforded under the relevant insurance policies and Travelers right to disclaim coverage, terminate its defense and seek reimbursement for the defense costs incurred relating to the Underlying Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Travelers Property Casualty Company of America respectfully requests that this Honorable Court issue judgment as follows:

1.    Declaring that there is no coverage under the Travelers Policy and Umbrella Policy for the Underlying Action or any damages or judgment arising therefrom;

2.    Declaring that Travelers owes no duty to defend or indemnify Defendant Mauser in the Underlying Action;

3.    Declaring that Travelers is entitled to terminate its defense of Defendant Mauser in the Underlying Action.

4.    Declaring that Travelers is not liable to pay or satisfy any claims, judgments, or awards in the Underlying Action;

5.     Declaring that Travelers is entitled to reimbursement for the defense costs paid relating to the defense of Mauser in the Underlying Action.

6.     Granting an award in favor of Travelers for the costs of suit incurred herein; and

7.     Granting such other and further relief as the Court may deem just and proper.


Dated: November 13, 2025
       Downers Grove, IL

                              **TRAVELERS PROPERTY CASUALTY**
                              **COMPANY OF AMERICA**

                              By:   /s/ Jeanne M. Hoffmann
                                    Jeanne M. Hoffmann, One of its Attorneys
                                    (6201309)
                                    USERY & ASSOCIATES
                                    3010 Highland Pkwy, 4th Floor
                                    Downers Grove, IL 60515
                                    Firm I.D. No.: 100755

                                    **Mailing Address:**
                                    P.O. Box 2996
                                    Hartford, CT 06104-2996

                                    Direct: 630-961-7046
                                    Main: 917-778-6680
                                    Fax: 844-571-3789
                                    Email: Jhoffma8@travelers.com